**In the Matter of the Welfare of R.L.M., K.J.M. and C.L.M.: Larry S. Green, Petitioner, Respondent,**

v.

**James MOON, Appellant.**

**No. C8–87–108.**

Court of Appeals of Minnesota.

Aug. 25, 1987.

Review Denied Oct. 28, 1987.

Kay N. Hunt, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for respondent.

William G. Mose, Brainerd, for appellant.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and LOMMEN,* JJ.

## OPINION

LESLIE, Judge.

James Moon appeals from an order denying his motion for a new trial. Appellant's parental rights were terminated and he sought to set aside the order for after-discovered fraud on the court. The trial court denied the motion and Moon appealed. We affirm.

### FACTS

The marriage of Ardith Moon and Appellant James Moon was dissolved in September 1979. In February 1980, the county court granted custody of the parties' three minor children, R.L.M., now 18, C.S.M., now 14, and K.J.M., now 13, to Ardith Moon. Shortly thereafter the county filed

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

neglect petitions regarding the children. After a hearing on the neglect petitions on July 15, 1980, the court placed the children in foster care.

Appellant removed the children from their foster home without the court's permission on September 30, 1980, and took them to Iowa. The Watonwan County Human Services department received reports that the children were being neglected in Des Moines, Iowa. The county sent a social worker to Des Moines to get the children and return them to the foster home.

After the children had been in foster care for more than a year, respondent Larry Green, a Watonwan County mental health worker, filed petitions for termination of parental rights on the children. The county court issued a summons and notice of hearing, setting October 20, 1981 for the hearing.

The human services office and their attorneys attempted to locate appellant to serve him with notice of the hearing. They were unable to locate him anywhere, but did determine he had not resided in the county for at least a year and had not left a forwarding address with them or the probation office in Des Moines Iowa. Based on this information, the court concluded personal service could not be made on appellant. Instead, the court ordered service by publication and by certified mail to appellant's last known address, pursuant to statute. The summons and notice was properly published and sent to appellant's last known address. The letter was returned from that address and marked "refused."

At the termination of parental rights hearing on October 20, 1981, appellant failed to appear. Ardith Moon consented to the termination of her parental rights. The trial court found the allegations in the termination petitions were proved by clear and convincing evidence and ordered that appellant's parental rights were terminated. The children were placed in the custody of the Commissioner of Public Welfare, were adopted and have lived with their adoptive family since that time.

Nearly one year later appellant wrote to the county human services department, requesting visitation with the children. The county responded with a letter on October 12, 1982 serving appellant with copies of the court's termination orders and advising appellant that no visitation was allowed.

On February 7, 1985, over three years after the court's order, appellant filed a motion for new trial. He alleged that the county human services department made fraudulent misrepresentations to the court regarding his whereabouts at the time of the initial hearing. He claimed the county knew of his location and could have obtained personal service. In particular, he claims he gave his current address to a social worker at the county, that he wrote to his children at the foster home disclosing his exact whereabouts, and that the county was aware of his mother's address in California. His motion papers raised no other issues, contained no additional grounds for setting aside the judgment and did not challenge the constitutionality of the statutes which provide for substitute service.

Prior to the hearing on the motion the parties stipulated to certain facts. They agreed that the order for publication complied with the requirements of Minnesota law; that the only factual issue in controversy was whether the County committed a fraud on the court at the time of the termination hearing; and that if the County was not aware of appellant's whereabouts at the time of the hearing the service by publication was validly accomplished pursuant to statute. The trial court found appellant's fraud claim rested on an allegation that the county agency knew or should have known of his whereabouts.

The trial court heard the motion on August 29, 1986. Appellant presented two contradictory affidavits in support of his position. In one he claims he was present in Minnesota at the time of the hearing. In a letter attached to appellant's second affidavit he states he was in "Esterville, Iowa, or Salt Lake City, Utah" at the time of the hearing. He claimed he contacted and gave his current address to a social worker

at the county just prior to the hearing and was therefore entitled to personal service.

Respondent presented several affidavits at the motion hearing, including affidavits of all 10 social workers who worked for the county in 1981. All denied ever being contacted by appellant, and stated they had no knowledge of his whereabouts in October 1981.

The trial court denied the motion for failure to file within the 15 day limit of Minn.R.Juv.P. 60.03, subd. 2. Additionally, although appellant did not seek vacation of the judgment, the trial court considered the matter pursuant to Minn.R.Civ.P. 60.02. It found the county did not know the whereabouts of appellant or have any reasonable means of locating him for personal service. Thus, the trial court concluded appellant had not established his claim; that service by publication and mailing was validly accomplished; and that appellant failed to establish fraud or misrepresentation. Appellant asserts the order terminating his parental rights should be set aside. He claims the County committed fraud or misrepresentation on the court.

### ISSUE

Was the trial court's refusal to set aside the order terminating appellant's parental rights clearly erroneous?

### ANALYSIS

The parties stipulated that the only issue before the trial court was whether the county had committed a fraud on the court. An order terminating parental rights may be set aside at any time for after-discovered fraud upon the court. *In re the Welfare of C.R.B.*, 384 N.W.2d 576, 579 (Minn. Ct.App.1986) *pet. for rev. denied* (Minn. May 29, 1986). Fraud on the court exists:

> Where a court is misled as to material circumstances, or its process is abused, resulting in the rendition of a judgment which would not have been given if the whole conduct of the case had been fair * * *.

*Id.* (quoting *Halloran v. Blue & White Liberty Cab Co.*, 253 Minn. 436, 442, 92 N.W.2d 794, 798 (1958)). A trial court's finding regarding fraud and misrepresentations to the court will only be disturbed if it is clearly erroneous. *C.R.B.*, 384 N.W.2d at 580.

In *C.R.B.*, the evidence showed the mother did not fully appreciate the effect of termination proceedings, did not fully understand her alternatives and was not represented by counsel. Additionally, no actual rupture of the mother-child relationship had occurred following the termination. For these reasons the trial court vacated the termination order and this court affirmed. *C.R.B.*, 384 N.W.2d at 579–80.

Appellant claims the county committed fraud by alleging it had no knowledge of his whereabouts prior to the termination hearing. Appellant does not allege the county did not use due diligence in attempting to locate him prior to the hearing. Instead, he claims he gave his address to a county worker just prior to the hearing and was therefore entitled to receive personal service. However, the county presented affidavits from all who worked there in 1981. None had had any contact with appellant and none knew of his whereabouts at that time. Appellant himself appears confused about where he resided at the time. He presented two contradictory affidavits in support of his position. In one he claims he was present in Minnesota at the time of the hearing. In a letter attached to appellant's second affidavit he states he was in "Esterville, Iowa, or Salt Lake City, Utah" at the time of the hearing.

Appellant also claims he sent letters to his children at their foster home prior to the hearing, disclosing his current address and that the county knew the whereabouts of his mother and therefore could have contacted him. However, appellant presented no credible evidence to the trial court to establish this claim. Appellant does present some evidence on appeal to support his claims. This material, which consists of two letters in the appendix to appellant's brief, is not part of the trial court record and is therefore stricken. *See* Minn.R.Civ.App.P. 110.01.

Additionally, appellant did not attempt to contact his children for almost a year after the termination hearing. Thus, unlike the parent-child relationship in *C.R.B.*, a rupture had occurred in appellant's relationship with his children. Appellant did not move for relief until over two years after receiving notice that his parental rights were terminated, thus extending the break in the parent-child relationship. The children were adopted in 1982 and have lived with their adoptive family for over five years. It has now been nearly six years since appellant's parental rights were terminated. Under these circumstances, it was not clearly erroneous for the trial court to deny appellant's motion.

## DECISION

The trial court was not clearly erroneous in finding no fraud had been committed on the court. Appellant failed to establish grounds for setting aside the order terminating his parental rights.

Affirmed.